IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PHILLIP PEMBERTON,

                Plaintiff,

vs.                                          Case No. 21-3152-SAC

(FNU) DEDEKE, et al.,

                Defendants.

**O R D E R**

Plaintiff, <u>pro se</u>, has filed this action alleging violations of his constitutional rights in relation to his incarceration at the Leavenworth County Jail (LCJ).  Plaintiff brings this case pursuant to 42 U.S.C. § 1983.[1]  This case is before the court for the purposes of screening plaintiff's second amended complaint (Doc. No. 12) pursuant to 28 U.S.C. § 1915A.  The court applies the screening standards set forth in the first screening order.  See Doc. No. 11.

I. <u>The second amended complaint</u>

Plaintiff generally alleges violations of the Eighth and Fourteenth Amendments and malpractice.  He names the following defendants:  (FNU) Dedeke, Sheriff of Leavenworth County, Kansas;

---

[1] Title 42 United States Code Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . causes to be subjected, any citizen of the United States . . . to the deprivation of by rights, privileges, or immunities secured by the Constitution and laws [of the United States]."

1

Melissa (LNU), at nurse at LCJ; an "arresting officer"; and Lt. Thorne, commander of LCJ. Plaintiff describes defendant Dedeke as controlling the jail. He describes defendant Thorne as commanding the jail and enforcing jail policies and procedures. He describes defendant Melissa (LNU) as being in charge of medical care and policies at LCJ.

Plaintiff alleges that in early April 2021 he was arrested and, because he complained of medical problems, was taken by ambulance to an emergency room where he was treated intravenously with medications, vitamins and fluids for alcohol withdrawal. Plaintiff believes the emergency room doctor prescribed him Librium, although he was not allowed to see the paperwork.

Plaintiff was taken to LCJ, booked, and placed in a medical observation sell for the night. Plaintiff felt sick the next morning and thought delirium was setting in because he could not walk straight. He left the medical observation cell but was told to return to it. He continued to feel sick and sleep throughout the day until he was awakened and reassigned to a cell in booking. He asked about his meds and was told to wait. Later, he was moved to a pod cell with six other inmates. He was still feeling bad, sweating and delirious. At the time for passing out medicine, plaintiff was told that there was no medicine ordered for him. Plaintiff sent a request for medicine. He was told that he had refused his medication, although plaintiff insists it was never

2

offered. Plaintiff continued to feel quite sick and was told by inmates that he looked ill. He claims that he had a seizure in the cell that scared his cellmate.

Plaintiff states that he was continuously sick for eight to ten weeks from April 2021 to June 2021. He generally describes fever, sweating, and shaking in his sleep. He asserts that every two to three weeks he had an attack but was denied treatment. Plaintiff also claims pain in his side, back and stomach. He claims that he has had issues with loose stools which caused him to need new pants in July and that his right side is quite painful to the touch and bloated. He alleges, however, that defendant Melissa (LNU) has refused to treat him on many occasions even though he is charged $15 from his inmate account for each visit.

Plaintiff further claims that LCJ did nothing to protect him from COVID-19. He asserts that new inmates were not quarantined, not required to wear a mask, and not given a vaccination. Plaintiff tested positive on August 6, 2021, although he did not learn the result until August 20, 2021. His pod was locked down for 17 days. Plaintiff claims he reported on August 14th that he had breathing problems, terrible headaches and nerve pains. A nurse named Brandy told plaintiff he had tested positive. She further advised him that he should order ibuprofen or Tylenol from the commissary and that his trouble breathing was from anxiety from being locked down as a COVID precaution.

He further asserts that he has anxiety which is untreated. He claims that his mental health problems are sometimes debilitating, but there are no programs at LCJ for treatment.

Finally, plaintiff alleges that he was beaten badly by another inmate and given a concussion and other injuries in September or October of 2020. He claims his injuries exacerbated previous injuries from a car accident. Plaintiff asserts that he has had spastic moments, confusion, memory loss, and, worst of all, head pain since the fight. He alleges that he was prescribed ibuprofen by a nurse who plaintiff does not identify by name.

Plaintiff seeks monetary damages and an investigation by an outside agency.

II. The court shall not order an investigation by an outside agency.

The court does not believe it has the authority to order an investigation of LCJ by a non-party outside agency. See Nicholas v. Heffner, 228 Fed.Appx. 139, 141 (3rd Cir. 2007)(court lacks authority to order federal investigation and prosecution of defendants or termination of employment); Mashak v. Minnesota, 2012 WL 928225 *25 (D.Minn. 1/25/2012)(no authority to compel executive agency investigation); Lovoi v. U.S. Dept. of Justice, 679 F.Supp.2d 12, 14 (D.D.C. 2010)(court lacks authority to compel a Department of Justice investigation). Therefore, the court

4

rejects plaintiff's request for an outside agency investigation of the jail.

III. Plaintiff's constitutional claims

Plaintiff's constitutional claims concern the denial of medical care while he was incarcerated at LCJ in 2020 and 2021.[2] Whether plaintiff was a pretrial detainee during this period and protected by the Fourteenth Amendment or serving a sentence and protected by the Eighth Amendment, the constitutional standard is the same. Strain v. Regalado, 977 F.3d 984, 989 (10th Cir. 2020). That standard is deliberate indifference to serious medical needs. Id.

A. Standards

The Tenth Circuit recounted the standards for stating a claim for deliberate indifference to serious medical needs in Strain, 977 F.3d at 989-90:

> To state a cognizable claim, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976)). This standard includes both an objective component and a subjective component. Clark v. Colbert, 895 F.3d 1258, 1267 (10th Cir. 2018). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "A medical need is [objectively] serious if it is one

---

[2] Plaintiff briefly refers to the confiscation of his "legal work," most of which was later returned. He does not link this action, however, to a named defendant.

5

> that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Clark, 895 F.3d at 1267 (alteration in original and citation omitted). The subjective component requires Plaintiff to establish that a medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (alteration in original) (quoting Farmer, 511 U.S. at 837, 114 S.Ct. 1970).

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006)(quotation omitted). Chronic and substantial pain is an indication of a "serious" medical need. Hayes v. Snyder, 546 F.3d 516, 522-23 (7th Cir. 2008). However, "[n]ot every twinge of pain suffered by a prisoner places a medical professional under a constitutional obligation to act." Tennyson v. Raemisch, 638 Fed.Appx. 685, 690 (10th Cir. 2015).

As the court noted in the prior screening order, a viable § 1983 claim must establish that each defendant caused a violation of plaintiff's constitutional rights. Walker v. Mohiuddin, 947 F.3d 1244, 1249 (10th Cir. 2020)(quoting Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013)).

> Plaintiffs must do more than show that their rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants, or specific policies over

>  which particular defendants possessed supervisory responsibility…

Id. at 1249-50 (quoting Pahls); see also, Robbins v. State of Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008)("a complaint must make clear exactly who is alleged to have done what to whom").

"A plaintiff must satisfy 'three elements ... to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind.'" Estate of Booker v. Gomez, 745 F.3d 405, 435 (10th Cir. 2014)(quoting Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 767 (10th Cir. 2013)). "Personal involvement" can be alleged by stating that: 1) the supervisor personally participated in the alleged violation; 2) the supervisor exercised control or direction over the alleged illegal acts, or the supervisor's failure to supervise caused the alleged illegal acts; 3) the supervisor knew of the violation and acquiesced in its continuance; or 4) the supervisor promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights. Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2020). A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights. Id. at 1195-96. A culpable "state of mind" requires proof

7

that a supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur. Id. at 1196. The Tenth Circuit has held that a warden's response to grievances may signify nothing more than a reasonable reliance on the judgment of prison medical staff. Phillips v. Tiona, 508 Fed.Appx. 737, 744 (10th Cir. 2013)(warden may rely on the judgment of prison medical staff); Arocho v. Nafziger, 367 Fed.Appx. 942, 956 (10th Cir. 2010)(same); see also, Allen v. Reynolds, 475 Fed.Appx. 280, 284 (10th Cir. 2012)(notice of dispute given to prison warden does not show his personal participation in unconstitutional conduct); Jovel v. Berkebile, 2015 WL 4538074 *4 (D.Colo. 7/28/2015)(same); Karsten v. Davis, 2013 WL 2120635 *11-12 (D.Colo. 4/26/2013)(awareness of plaintiff's complaints does not constitute personal participation in constitutional violation).

B. Analysis

1. Deliberate indifference to a serious need

In the previous screening order in this case, the court found that "plaintiff's general claims that he was denied mental health care or medical care do not adequately describe a plausible cause of action for deliberate indifference to a serious medical need."[3]

---

[3] The court cited the following cases as support: Cary v. Hickenlooper, 674 Fed.Appx. 777, 780 (10th Cir. 2016)(claim of denial of "appropriate medical care" is insufficient to state a claim for relief); Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010)(rejecting vague and conclusory allegations regarding lack of medical treatment); Shunn v. Benson, 2020 WL 1666791 *8 (D.Idaho 4/2/2020)(denial of "mental health treatment" too vague); Wade v. Paisle, 2019 WL 2142108 *2 (E.D.Cal. 5/16/2019)(denial of "medical care" and "mental health

8

Doc. No. 6, at pp. 7-8. The court gave plaintiff an opportunity to file an amended complaint.

Upon review of the second amended complaint, the court finds that plaintiff has supported some of his claims with more specific factual allegations. The court concludes, however, that plaintiff has failed to state a cause of action for deliberate indifference to a serious medical need with his claims regarding COVID precautions, mental health care, and head injury treatment.

Plaintiff states that he had COVID symptoms. He describes the symptoms generally ("breathing problems," "terrible headaches," and "nerve pains"). He recounts that a nurse named Brandy told him to take ibuprofen or Tylenol and that the breathing problems were from anxiety caused by being locked down to mitigate the spread of COVID. An alleged failure to treat "self-diagnosed ailments" is insufficient to state a claim for an Eighth Amendment violation. Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010). Plaintiff does not allege facts showing that his breathing problems were caused by COVID-19 or that his headaches and "nerve pains" were severe, were known or should have been known by a named defendant to be severe, and were not adequately treated with the suggested medication. While the court does not dispute that COVID-19 may cause serious illness, plaintiff has not alleged facts

---

care" too vague); Bridges v. Federal Bureau of Prisons, 2018 WL 9458201 *4 (D.Colo. 4/10/2018)(same).

9

showing that his symptoms created a serious medical issue diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the need for a doctor's attention. Nor does he not allege facts showing that a named defendant gave ineffective advice or was deliberately indifferent to the risk of serious harm. Therefore, he has failed to state a constitutional claim. See Bird v. Daniels, 2021 WL 4143240 *5-6(D.Nev. 9/10/2021)(dismissing claim because allegations did not show that defendants knew about a serious medical need from COVID and were indifferent to it); Allen v. Wetzel, 2021 WL 2254997 *7 (M.D.Pa. 6/3/2021)(finding failure to state a claim where complaint was devoid of allegations of serious symptoms upon contracting COVID).

Plaintiff's allegation that he has mental health issues (anxiety) is even more general or vague.[4] The amended complaint fails to describe a plausible claim that he suffered from a serious mental issue diagnosed by medical personnel as requiring treatment or that a lay person would recognize it as needing a doctor's attention. Nor does plaintiff allege facts showing that defendants other than perhaps Melissa (LNU) were aware of his mental health problems.

---

[4] Plaintiff does state that he has a "diagnosis" from other doctors that defendant Melissa ((LNU)) has no interest in. However, he does not describe the diagnosis, identify the doctor, provide a date for the diagnosis, or indicate the severity of the diagnosis.

10

Plaintiff was given treatment for the head injuries he received from the inmate fight.[5] He does not allege facts, as opposed to his self-diagnosis, showing that this treatment was deficient or demonstrated deliberate indifference to his medical issues. Gee, 627 F.3d at 1192 (disagreement with a particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation). Nor does he allege facts showing that any individual defendant named in the complaint participated in plaintiff's treatment for head trauma or that they were deliberately indifferent to a serious risk of harm.

2. Personal participation

"[P]ersonal participation in the specific constitutional violation complained of is essential." Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011). As indicated in the previous section of this order, plaintiff's allegations in some instances fail to describe how the named defendants participated in the alleged constitutional violations. In this section, the court shall elaborate upon that point. Also, plaintiff has failed to plausibly allege that some defendants had a culpable state of mind.

Plaintiff lists "the arresting officer" as a defendant, but fails to allege facts showing he personally participated in a denial of plaintiff's constitutional rights. Plaintiff asserts

---

[5] In addition to treatment with ibuprofen, plaintiff had x-rays taken, according to the original complaint. Doc. No. 1, p. 5.

that the arresting officer refused to grant plaintiff access to his prescription papers from the hospital and would not allow him to read the doctor's orders. This, however, is not a violation of the Eighth or Fourteenth Amendments, and plaintiff does not describe facts showing it provides other grounds for recovery under § 1983.

Plaintiff's allegations also fall short of plausibly showing that defendant Dedeke and defendant Thorne are liable for a constitutional violation. Plaintiff states generally that he has filed several grievances regarding the denial of medical care which were directed to the attention of defendants Dedeke and Thorne. He does not describe any of these grievances in detail. He has alleged, however, that Melissa (LNU) stated that Lt. Thorne makes her see plaintiff for medical visits, although she does not treat him at the visits.

The amended complaint does not describe facts showing that defendants Dedeke and Thorne personally participated in the denial of prescription medicine for plaintiff's alcohol withdrawal or in Melissa (LNU)'s alleged failure to treat plaintiff for his complaints of pain and other symptoms in the following months. Plaintiff appears to allege that the failure to act in response to plaintiff's grievances demonstrates knowing acquiescence in an unconstitutional policy or custom. Plaintiff does not allege, however, that prescribed medicine for alcohol withdrawal is

generally denied with Dedeke's and Thorne's knowledge at LCJ, or that plaintiff's prescribed medicine for other medical issues, if any, is generally denied with the knowledge of defendant Dedeke or Thorne.  Nor does he allege that either Dedeke or Thorne were aware of the prescription issue while plaintiff was still going through alcohol withdrawal.

As for failing to treat plaintiff's complaints of pain, plaintiff has alleged no facts showing that defendants Dedeke or Thorne were deliberately indifferent to a serious medical need as opposed to trusting that the medical staff at LCJ was in good faith rendering medical care during plaintiff's visits.

In sum, plaintiff has failed to allege facts which would plausibly show an affirmative link between defendants Dedeke and Thorne and the alleged unconstitutional denial of health care. Plaintiff's allegations do not demonstrate knowing acquiescence in an unconstitutional policy or practice which led to plaintiff's injury.  Moreover, plaintiff's allegations fail to show that defendants Dedeke and Thorne were deliberately indifferent that a constitutional violation would occur.  There are no facts stated which would show they were aware of a substantial risk of serious medical harm to plaintiff but failed to act against it.[6]  Plaintiff

---

[6] In addition, plaintiff does not allege facts showing that a claim for negligent medical care existed against defendants Dedeke, Thorne or the arresting officer.

merely alleges that they were aware of plaintiff's complaints that he did not receive proper care.

IV. Conclusion

The court directs that all claims against the arresting officer and defendants Dedeke and Thorne be dismissed. The court also dismisses any claims based upon alleged inadequate treatment for COVID, mental health issues, and head trauma. Claims remain against defendant Melissa (LNU) for denial of prescribed medicine for alcohol withdrawal and failure to care for plaintiff's alleged painful side, back and/or abdominal pain. The court directs the Clerk to prepare waiver of service forms to be served upon defendant Melissa (LNU).[7]

**IT IS SO ORDERED.**

Dated this 8th day of October 2021, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge

---

[7] Plaintiff has the primary responsibility to provide sufficient name and address information for the waiver of service forms or for the service of summons and complaint upon a defendant. See Nichols v. Schmidling, 2012 WL 10350 *1 (D. Kan. 1/3/2012); Leek v. Thomas, 2009 WL 2876352 *1 (D. Kan. 9/2/2009). So, plaintiff is warned that if waiver of service forms or summons cannot be served because of the lack of name and address information, and correct address information is not supplied to the Clerk of the Court, ultimately the unserved parties may be dismissed from this action. See FED.R.CIV.P. 4(m).