**In the United States District Court
for the District of Kansas**

_____

Case No. 21-cv-3152-TC-TJJ

_____

PHILLIP PEMBERTON,

*Plaintiff*

v.

MELISSA WARDROP,

*Defendant*

_____

**MEMORANDUM AND ORDER**

Plaintiff Phillip Pemberton filed this pro se civil rights action, alleging that Defendant Melissa Wardrop, a nurse at the Leavenworth County Jail, was deliberately indifferent to his medical needs. Doc. 12. Wardrop moved for summary judgment, Doc. 86, and, when Pemberton failed to respond, to dismiss for lack of prosecution, Doc. 95. For the following reasons, Wardrop's motion for summary judgment is granted and her motion to dismiss is denied as moot.

**I**

**A**

**1.** Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "'material' if it might affect the outcome of the suit under the governing law." *Janny v. Gamez*, 8 F.4th 883, 898–99 (10th Cir. 2021) (quoting *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997)). Disputes over material facts are "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 899 (quoting *Allen*, 119 F.3d at 839). Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant at the summary

judgment stage. Belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

The parties must identify material facts by reference to "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1173 (10th Cir. 2020) (citation and internal quotation marks omitted); *see also* D. Kan. R. 56.1(a-d). The court "construe[s] the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant." *Janny*, 8 F.4th at 899 (quoting *Allen*, 119 F.3d at 839–40). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Janny* at 899, or unsupported by the record as a whole, *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Heard v. Dulayev*, 29 F.4th 1195, 1202 (10th Cir. 2022).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137. If the nonmoving party fails to file a response within the specified time, it "waives the right to respond or to controvert the facts asserted in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). In that case, "all material facts asserted and properly supported in the summary judgment motion" are accepted as true, and summary judgment is granted "if those facts entitle the moving party to judgment as a matter of law." *Id.*

**2.** Plaintiff did not respond to Defendant's motion or statement of facts as required by Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(b)(1).[1] While "[a] pro se litigant's [filings] are to be construed liberally and held to a less stringent standard than formal [filings] drafted by lawyers," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted), this Court may not "supply additional factual allegations" or "construct a legal theory"

---

[1] Wardrop subsequently filed a motion to dismiss for failure to prosecute. Doc. 95. That motion is denied as moot because summary judgment has been granted to Wardrop.

2

on behalf of a pro se plaintiff. *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

**B**

The following facts are taken from Wardrop's uncontroverted statement of facts. Doc. 87 at 7–11. Those facts, where properly supported, are accepted as true for purposes of this motion because Pemberton failed to respond as required by Fed. R. Civ. P. 56(e).[2]

On April 7, 2021, Pemberton was arrested and incarcerated at the Leavenworth County Detention Center. Doc. 87 at ¶ 1. Prior to being booked, Pemberton received medical care at St. John Memorial Hospital for symptoms associated with alcohol withdrawal. *Id.* at ¶ 2. He received a prescription for Librium from the treating doctor in the emergency room and was cleared for incarceration. *Id.* at ¶ 3. At the detention facility, Pemberton was placed under medical observation, satisfied the facility's "Fit for Confinement Policy," and did not report ongoing symptoms. *Id.* at ¶¶ 4–6.

Medical staff informed Pemberton that if he wished to take the Librium while incarcerated, he would need to consent to be housed in medical observation cells. Doc. 87 at ¶ 8. Librium is a controlled substance, and it is the facility's policy to administer it only to those housed in a medical holding cell. *Id.* At ¶ 7. Pemberton stated that he understood but that he did not wish to be housed in the medical cells. *Id.* at ¶ 8.

Two days later, Pemberton reported through the medical kiosk that he was dizzy, throwing up, and wanted his medication. *See* Doc. 87 at ¶ 9; *see also* Doc. 87-21. Wardrop reminded Pemberton that he had requested to be housed in general population and that facility policy did not permit the administration of Librium to a person in the

---

[2] By failing to respond, Pemberton, "confessed all facts asserted and properly supported in the summary judgment motion." *Murray v. City of Tahlequah, Okl.,* 312 F.3d 1196, 1200 (10th Cir. 2002) (finding that pro se plaintiff admitted facts when he failed to respond). Nevertheless, this Court must still make determinations that there are no genuine issues of law or fact, as required by Fed. R. Civ. P. 56, even in a situation where the non-moving party does not respond to summary judgment. *Id.*

general population. Doc. 87-21. She also informed him that medical staff must approve any medication given, notwithstanding a prior prescription, and advised him to "drink more water to flush [his] system out." Doc. 87 at ¶ 9; Doc. 87-21.

Pemberton subsequently filed numerous medical grievances. On April 21, Pemberton requested a "mental health professional not a nurse that judges [him]." Doc. 87-22 at 2. Wardrop replied that his grievance was not justified and that mental health professionals were available through the facility. *Id.* On April 30, Pemberton reported that he was "bleeding out [his] ass and throat" but could not get proper medical treatment "because nurses just take [his] money and don't even see [him]." *Id.* Wardrop responded that Pemberton had "never submitted a sick call for this" but would receive "proper treatment." *Id.* On May 3, Pemberton reported that he had been "kneed in the groin" and "wanted someone to look at it." Doc. 87 at ¶ 10. He requested, however, that Wardrop not be his nurse because she "charges me without seeing me" and "is rude." *Id.* He further requested a restraining order against her. *Id.* Wardrop replied and informed Pemberton that she was the only treating nurse at the facility. *Id.*

Pemberton filed another grievance on May 8 reporting, "I am getting extremely sick and will [sic] rather sit up in cell and die rather than ask that nurse for help." Doc. 87-23; Doc. 87 at ¶ 11. Two minutes later, Pemberton filed another grievance: "Think im [sic] having appendix attack and not asking that nurse for help Id [sic] die first." Doc. 87-22 at 1. Two days later, Wardrop replied that Pemberton was misusing the kiosk by filing improper grievances and that she would report his conduct to the jail commander. *Id.* Hours after Wardrop's reply, Pemberton filed another grievance that Wardrop refused him medicine and caused his sickness. *Id.* In response to her charge that he was filing improper grievances, Pemberton said, "[I] don't even know how you get your own grievance." *Id.*

On May 17, Wardrop saw Pemberton for treatment, but he refused to be treated by her. Doc. 87 at ¶ 12. Wardrop gave Pemberton a "Refusal and Release of Liability of Medical Treatment Form" that advised him that "[p]ossible delay in needed assessment and treatment of a medical problem; may increase life threatening complica-

tions and possible death." *Id.* Wardrop and a Leavenworth County Police officer present at the visit signed the form as witnesses.[3] *Id.*

Pemberton thereafter filed this suit against Wardrop, alleging a constitutional violation under 42 U.S.C. § 1983 and seeking $3 million in damages. Doc. 82 at ¶¶ 4.a, 5. Specifically, he alleges that Wardrop violated his constitutional right to be free from cruel and unusual punishment when she denied him Librium for alcohol withdrawals and failed to care for his side, back, or abdominal pain. Doc. 82 at ¶ 4.a Wardrop moves for summary judgment, arguing that the uncontroverted facts fail to establish a deprivation of Pemberton's clearly established constitutional right.

## II

### A

Pemberton's claim relies on 42 U.S.C. § 1983. Doc. 82 at 5. That statute creates no substantive rights; it simply offers an avenue to redeem rights guaranteed elsewhere. *Health & Hosp. Corp. of Marion Cty. V. Talevski*, 143 S. Ct. 1444, 1455 (2023). To recover, a plaintiff must establish that a person acting under the color of state law caused him to be deprived of a right secured by the Constitution or the laws of the United States. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

In her summary judgment motion, Wardrop contends that Pemberton has failed to establish a violation of his rights secured by the Constitution. Doc. 86 at 1. These claims sound in the Fourteenth Amendment because it appears Mr. Pemberton was a pretrial detainee at the time of the complained-of events. Doc. 87-2 at 1. The Fourteenth Amendment's guarantee of due process has been construed to obligate the government to provide medical care to both prisoners and pretrial detainees. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) and *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)). Generally speaking, it precludes a medical professional from acting with delib-

---

[3] Wardrop provides additional facts pertaining to sick calls Pemberton made in August 2021 when he contracted COVID-19. All of Pemberton's claims concerning inadequate treatment for COVID have been dismissed, Doc. 82 at 1 n.1, so those facts are omitted here.

erate indifference to a detainee's serious medical needs. *Paugh v. Uintah County*, 47 F.4th 1139, 1153 (10th Cir. 2022).

Deliberate indifference "entails something more than mere negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Deliberate indifference equates "to 'recklessness,' in which 'a person disregards a risk of harm of which he is aware.'" *Id.* (citing *Verdecia v. Adam*, 327 F.3d 1171, 1175 (10th Cir. 2003)); *see also Elonis v. United States*, 135 S. Ct. 2001, 2015 (2015) (Alito, J., concurring) (recognizing that, unlike negligence, which imposes liability when an individual should have been aware of a substantial, unjustifiable risk, recklessness exists only when a person actually disregards a risk he or she is aware of).

A deliberate indifference claim is analyzed under a two-part inquiry, one part objective and the other subjective. *Strain v. Regalado*, 977 F.3d at 989. To avoid summary judgment, Pemberton must show the objective seriousness of his identified medical conditions and Wardrop's culpable state of mind. *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). He may show the latter in the form of (i) conscious disregard of a substantial risk of serious harm or (ii) actual knowledge of a serious medical condition (e.g., a heart defect) and refusal to order further treatment. *Id.* at 1233.

## B

The uncontested facts do not demonstrate either objective seriousness of medical issues or a culpable state of mind.[4] As a result, Wardrop is entitled to summary judgment.

---

[4] Because the uncontroverted facts do not establish a constitutional violation, it is unnecessary to reach the questions of whether Wardrop is entitled to invoke qualified immunity and, if so, whether the alleged violation was clearly established. *See Filarsky v. Delia*, 566 U.S. 377, 384 (2012) (exploring whether private attorney performing public service is entitled to invoke protections of qualified immunity); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (recognizing that it remains the better approach for courts to resolve the constitutional question before, if necessary, answering the clearly established question).

**1.** Wardrop argues first that the objective component is not met. Doc. 87 at 14–16. She is correct.

As noted, that prong of the test "focuses on the seriousness of the plaintiff's alleged harm," *Paugh*, 47 F.4th at 1154, and can be satisfied two ways. First, a plaintiff can show that the condition was "'sufficiently serious" that the complained-of conduct constitutes a "deprivation of constitutional dimension." *Paugh*, 47 F.4th at 1155 (quoting *Self*, 439 F.3d at 1230). A medical need is "sufficiently serious" if it is "one that has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

Second, "a plaintiff can . . . satisfy the objective component based on a delay in medical care . . . if the delay resulted in substantial harm." *Paugh*, 47 F.4th at 1155. (internal quotation marks omitted). "Substantial harm" may be established by presenting evidence of a plaintiff's lifelong handicap, permanent loss, or considerable pain. *Id.* In other words, substantial harm can be based either on an intermediate injury, "such as the pain experienced while waiting for treatment and analgesics," or an ultimate harm caused by the medical professional. *Id.* The pain experienced during the delay must actually be substantial: "not every twinge of pain suffered as the result of delay in medical care is actionable." *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (citation omitted).

On the first option, Pemberton cannot survive summary judgment for two reasons. First, the record does not show that Pemberton had a sufficiently serious medical condition. The only substantiated medical condition that Pemberton suffered from, on this record, is alcohol withdrawal and that he threw up and was dizzy. Doc. 87. It is possible that symptoms of alcohol withdrawal can satisfy this standard. *See, e.g.*, *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1029 (10th Cir. 2020) (concluding that "frequent" and "bloody" vomiting accompanying "severe withdrawal," qualifies as a serious medical condition); *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001) (recognizing that delirium tremens, the rapid onset of confusion, shaking, and hallucinations attributable to withdrawal from alcohol, qualifies as a serious medical condition). But the uncontroverted facts in this case do not meet that threshold: the record indicates only that Pemberton "threw up" and "was dizzy." Furthermore, he was cleared for incarceration by a St. John's Hospital treating physician and did not report any symptoms until two days after

his arrival at Leavenworth. On those bare facts, it does not appear that his alcohol withdrawal symptoms rose to the level of "severe withdrawal" that would constitute a sufficiently serious medical condition.[5]

Second, as Wardrop argues, the record does not demonstrate that Wardrop denied Pemberton care, so there was no actionable deprivation even if Pemberton's medical needs were sufficiently serious. Doc. 87 at 15. Wardrop evaluated Pemberton for alcohol withdrawal symptoms when he first arrived at the facility on April 7, 2021. It does not appear that Wardrop evaluated Pemberton each time he filed a medical grievance, but she did attempt to evaluate him on May 17. Each time, Pemberton refused additional evaluation, and Wardrop informed him of the risks of refusing care. Those facts do not support the contention that Wardrop denied Pemberton care for a sufficiently serious medical need. *See Johnson v. Mullin*, 422 F.3d 1184, 1186–87 (10th Cir. 2005) (holding that mere denial of a grievance and subsequent delay of care is insufficient by itself to survive a summary judgment motion).

On the second option, Wardrop contends, correctly, that there is no evidence, whether by medical records, expert testimony, or even personal affidavit, that Pemberton experienced substantial harm as a result of a delay in care. Doc. 87 at 15 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Indeed, Pemberton bore the burden to "set forth specific facts from which a rational trier of fact could find" in his favor. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). He was required to do so "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein," and only needed to "establish, at minimum, an inference of the presence of each element essential to [his] case." *Id.* at 1138. He failed to do so: the record is devoid of evidence of an actionable substantial harm resulting from delay. Pemberton has not satisfied his burden to produce evidence indicating otherwise. *See Amundsen v. Jones*, 533 F.3d 1192, 1198 (10th Cir. 2008) (noting that when a plaintiff has not car-

---

[5] While Pemberton self-reported that he had been "kneed," Doc. 87-22, was "bleeding" from various bodily orifices, *id.*, and was suffering an "appendix attack," *id.*, there is nothing in the record that would satisfy Pemberton's minimal burden to show he had or was diagnosed with such conditions.

ried their burden to produce evidence in a § 1983 context, their claim should not survive summary judgment).

The sum of Pemberton's conduct in the record also refutes any claim of substantial pain resulting from delay. After submitting his initial request for medication, Pemberton reported all his medical complaints in the form of grievances of Wardrop. He graphically alleged pain, but, in each instance, contrary to the behavior of someone experiencing substantial rather than momentary pain, added that he refused to be treated by the only nurse available, Wardrop. Doc. 87-22 at 1 (informing Pemberton that Wardrop is the only nurse). Again, there is simply no evidence that Pemberton suffered any substantial harm from any delay in care attributable to Wardrop. *Cf. Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) (finding that long-term heart damage or "severe chest pain" as a result of a delay in care satisfies the substantial harm test, but that anything amounting to, or less than, momentary twinges of pain does not).

**2.** Wardrop contends that the uncontroverted facts do not satisfy the subjective component either. Doc. 87 at 8. She is correct.

The subjective component of a deliberate indifference claim requires the submission of "evidence of the [medical professional]'s culpable state of mind." *Paugh*, 47 F.4th at 1156. A plaintiff must provide sufficient evidence that the trier of fact could find that the "defendant [knew] of and [disregarded] an excessive risk to inmate health or safety" by "establish[ing] that a defendant was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and that the defendant actually drew the inference." *Id.*

The record fails to establish that Wardrop inferred that a substantial risk of harm existed from Pemberton's complaints. Aside from the first request for medication, each of Pemberton's subsequent communications with Wardrop were titled with the subject "Medical Grievance." In each, Pemberton complained about Wardrop's care to which Wardrop responded that Pemberton could not "grieve medical." Doc. 77-22. So, the inference Wardrop drew (if any) appears to be that Pemberton was upset with the course of treatment, i.e., water instead of Librium in general population housing, rather than that Pemberton was reporting symptoms indicating serious risk of harm. But disagreement with a medical professional's considered course of treatment cannot be the basis of a successful subjective prong show-

ing. *See Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1270 (10th Cir. 2022) ("[A]bsent an extraordinary degree of neglect," the subjective component of the deliberate-indifference test is not satisfied "where a doctor merely exercises his considered medical judgment") (internal quotation marks omitted).

Additionally, there is no evidence that Wardrop "disregarded" a known risk of harm, nor did she "refuse[] to verify underlying facts that [s]he strongly suspected to be true, or decline[] to confirm inferences of risk that [s]he strongly suspected to exist." *Paugh*, 47 F.4th at 1156 (internal quotation marks omitted). At no point in the record does the evidence suggest that Wardrop knew that Pemberton faced a serious risk of harm. Instead, Wardrop appeared to construe each kiosk message as a grievance rather than a serious request for medical attention or report of legitimate symptoms. Again, Wardrop repeatedly informed Pemberton in her responses that he could not "grieve medical." Doc. 87-22. Then, on May 17, Wardrop took the further step of attempting to verify Pemberton's complaints, only for Pemberton to refuse care. Doc. 87 at ¶ 12. In short, this record is devoid of any facts indicating that Wardrop knew of and disregarded a substantial risk or refused to verify any underlying facts she suspected were true.

## III

For the foregoing reasons, Wardrop's motion for summary judgment, Doc. 86, is GRANTED. Wardrop's motion to dismiss for failure to prosecute, Doc. 95, is DISMISSED as moot.

It is so ordered.

Date: September 5, 2023         s/ Toby Crouse

                                            Toby Crouse
                                            United States District Judge